IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| NVIEW HEALTH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: _____ |
| | ) | |
| DAVID V. SHEEHAN, M.D. | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Nview Health, Inc. ("Nview") hereby files its verified complaint against David V. Sheehan, M.D. ("Sheehan"), respectfully showing the Court as follows:

### Introduction

1.      This lawsuit seeks to correct and remedy the disruptive and damaging conduct of a licensor of certain medical screening tools. In 2016, Defendant Sheehan exclusively licensed his screening tools ("Sheehan Technology") to Plaintiff Nview in exchange for significant consideration. Sheehan also agreed to an ongoing consulting agreement with Nview and accepted the title of Chief Scientific Officer. Pursuant to its licensed rights, Nview created digitized versions of the Sheehan Technology, which became a critical part of Nview's business. The license was amended in 2019 to further broaden and clarify Nview's already broad rights.  Recently, without justification, Sheehan started to engage in conduct designed to interfere with his own license, prevent licensing of Nview technology, profit from self-dealing, and damage Nview. Such conduct includes, but is not limited to: (i) Sheehan falsely informing customers and prospective customers that there is no digitized version of the Sheehan Technology; (ii) that he has not authorized any digitized Nview version (a right he does not have); (iii) that customers must use a translation

1

company called MAPI, which is a right he does not have, and which is a company that pays him personally; and (iv) redirecting customers to his paper versions in competition with his license and under the false position that he has an exclusive right to paper versions of the Sheehan Technology. In response to Nview's attempts to address Sheehan's conduct, Sheehan instead issued a frivolous Notice of Default with knowingly false allegations regarding Nview products and threatening Nview should it proceed its demands that Sheehan cease his conduct. Court intervention is thus necessary to address Sheehan's conduct.

## Parties, Jurisdiction, and Venue

2.    Plaintiff Nview Health, Inc. ("Nview") is, and at all relevant times has been a corporation organized under the laws of the state of Delaware with its headquarters and principal office address at 3575 Piedmont Road, Building 15, Suite 730, Atlanta, Georgia 30305. It is a citizen of the states of Delaware and Georgia.

3.    Defendant David Sheehan, M.D. ("Sheehan") is, and at all relevant times was, a citizen and resident of Lutz, Hillsborough County, Florida, who can be served with process at 611 Warren Rd., Lutz, Florida 33548. Sheehan is subject to the jurisdiction and venue of this Court.

4.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that (a) Nview and Sheehan are citizens of different states, and (b) the value of the matter in controversy, exclusive of interest and costs, exceeds $75,000.00.

5.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 in that this action is being brought in the judicial district in which Sheehan resides.

6.    Furthermore, one of the contracts at issue, a Consulting Agreement, contains a Florida venue provision.

14010693_5

## Factual Allegations

7.      Nview is in the business of providing healthcare professionals, educators and researchers with software solutions that assist them in more accurately and efficiently identifying, diagnosing, and monitoring individuals seeking behavioral health assistance. The software solutions themselves do not provide any medical diagnosis.

8.      Sheehan, a medical doctor, developed or co-developed and holds certain copyrights to certain technology consisting of healthcare assessment and monitoring tools, profiling scales, interviews and trackers that are used to help determine and monitor a patient's mental health. In particular, Sheehan developed certain scales and diagnostic interviews, including but not limited to the Mini International Neuropsychiatric Interview ("MINI"), the Sheehan Disability Scale ("SDS"), and other Sheehan scales.

9.      Sheehan licensed all patents, patent applications, copyrights, trade secrets, inventions, know-how, trademarks and other intellectual property rights owned by Sheehan or for which Sheehan has rights consisting of healthcare screening and monitoring tools, profiling scales, interviews, and trackers that are used to help determine and monitor a patient's mental health, including the MINI, the SDS, and other Sheehan scales, to Nview pursuant to the terms of a License Agreement dated February 15, 2016 (the "License Agreement"). A true and accurate copy of the License Agreement is attached hereto as Exhibit A and is incorporated herein by reference.

10.      The License Agreement specifically provides the following relevant provisions:

> 1.2.  "Field" means behavioral healthcare and healthcare technology specifically in **any format**. This includes all commercial and research applications for these technologies.
>
> 1.7.  "Sheehan Technology" means all patents, patent applications, copyrights, trade secrets, designs, inventions, know-how, trademarks and other intellectual property rights that are owned by Sheehan or for which Sheehan has rights consisting of healthcare assessment and monitoring tools, profiling scales, interviews, and trackers that are used to determine

3

14010693_5

and monitor a patient's mental health. The Sheehan Technology includes (a) the MINI, (b) the Sheehan Suicidality Tracking Scales, (c) the Sheehan Homicidality scales, (d) the Sheehan Disability Scale, (e) the Sheehan Irritability Scale and (f) all outcome measure trackers for which Sheehan is the sole owner and copyright holder (except the Homicidality scale), including but not limited to, the tracking system for medication dosing records, adverse event tracking, concomitant medication tracking and demographic data capture used in electronic data capture systems, in clinical research studies.

2.1.1. Sheehan hereby grants to Nview a worldwide, transferable, exclusive license, with the right to **sublicense** in multiple tiers, to **develop**, make, have made, **use, sell, offer to sell**, import, reproduce, distribute, **modify**, display and **otherwise commercialize** products utilizing the Sheehan Technology in the Field.

2.1.3. Sheehan shall retain the right to continue to use and bill for the use of the Sheehan Technology in paper format for all of his structured diagnostic interviews and rating scales.

11.    The License Agreement was amended by the First Amendment to License Agreement dated April 3, 2019 (the "Amendment"), a true and accurate copy of which is attached hereto as Exhibit B and is incorporated herein by reference.

12.    Relevant provisions of the Amendment include:

"1.2 'Field' means all fields of use, **in any** format, including behavioral healthcare, healthcare technology and commercial research applications."

"2.1.1 Sheehan hereby grants to Nview and its affiliates a worldwide, **perpetual** (subject to the termination provisions set forth herein), royalty free, fully paid, transferable, exclusive license, with the right to sublicense in multiple tiers, to develop, make, have made, use, sell, offer to sell, import, reproduce, distribute, modify, display and otherwise commercialize products utilizing the Sheehan Technology in the Field."

13.    The definition of "Field" makes clear that Nview is permitted to exercise its license rights in "any format," which was restated in the amendment with the fields of use clarified.  That would include digital (including .pdf) and paper.

14.    The scope of license is essentially and exclusively every right Sheehan had in the Sheehan Technology.  The Amendment clarifies that the License is perpetual.

14010693_5

15.     Nothing in the scope of the license states or suggests that Sheehan retains any right to dictate, approve, or be consulted with related to Nview's exercise of its license rights.

16.     Nor did Sheehan retain the right to dictate through whom Nview distributes the license copyrights nor the right to approve translations of the copyrights or dictate which translation companies

17.     In consideration for the license provided to Nview and the consulting services Sheehan was to provide to Nview, as identified more fully herein below, Sheehan received from Nview approximately $500,000 in cash payments, 376,944 shares of Nview (representing approximately 3% of Nview), and Sheehan is vested in 100,000 stock options at $00.23/share.

18.     Pursuant to the license granted to Nview in the License Agreement, Nview developed digital versions and applications of MINI and certain other of Sheehan's scales and diagnostic interviews.

19.     Pursuant to the terms of the License Agreement, Sheehan is not authorized "to make any representation . . . on behalf of Nview, or to make any representations or warranties, guarantees or commitments with respect to the technology, except as expressly authorized by Nview in writing." (License Agreement at Section 11.9).

20.     Sheehan has made numerous false and misleading statements to certain of Nview's customers and/or potential customers, including statements to the following effect:

        a.   that Sheehan has not approved electronic versions of the Sheehan Technology, including those distributed by Nview, implying a right he does not have and thus confusing customers and prospective customers regarding whether they may use Nview digital versions;

5

    b.  that the digital versions of the Sheehan Technology are invalid and that customers should use paper versions from Sheehan instead; and

    c.  that digital versions of the Sheehan Technology are not available.

21.    Sheehan spoke with Tanya Ryder from the Department of Child and Adolescent Psychiatry, Division of Mental Health and Addiction, Vestfold Hospital Trust, Norway, and told her that he has not approved electronic versions of the MINI, including the one distributed by Nview. Sheehan has no rights to approve such digital versions. Vestfold reported this to Checkware, an Nview customer. Checkware also reported that it is "going around" that the digital versions are invalid and that customers should use paper from Sheehan instead despite the fact that Nview also has the right to paper versions. Checkware reported that it is being significantly damaged.

22.    Dr. Sarah Melancon reported to Nview that she contacted Sheehan to see if the MINI screen could be administered online, and that he said that a digital version is not available. The entire purpose of Sheehan's involvement with Nview, including his exclusive license and consulting agreement, was to enable Nview to distribute his copyrights, especially in digital format.

23.    Sheehan has contacted translation companies used by Nview and its customers, except MAPI, and instructed them that they have no authority to translate the Sheehan Technology, including the MINI, and not to provide a paper version. This is preventing customers from obtaining regulatory authority for use of the MINI to the extent needed in other countries. Plus, Nview in its own right is licensed to paper without restriction on who it may direct customers to for translations. This is forcing customers to MAPI at a much higher price and extended delivery

times. That, in turn, is jeopardizing client relationships that need translations, as well as Nview's profits. Sheehan has no right or authority to issue such an instruction.

24.    Incredibly, Sheehan gets paid by MAPI for translations of his copyrights; including copyrights he exclusively licensed to Nview.  Sheehan is thus asserting a non-existent right for personal financial gain at the expense of Nview. Only Nview gets to dictate what entities translate its products that incorporate lawfully licensed Sheehan Technology.

25.    It is Nview's understanding that Sheehan has a contract with MAPI to be the exclusive translation of Sheehan Technology, including paper.  If Sheehan entered into conflicting contracts, that is Sheehan's issue.  Nview is an exclusive licensee of the Sheehan Technology, including rights to paper.

26.    Sheehan made the following statements to MedAvante, one of Nview's largest clients, despite the fact that Sheehan has no right to make these false statements:

> All translations of MINI 6 and MINI 7.0.2 and its variants (like MINI Kid) and all my scales, like the SDS or the S-STS (beyond the English language versions) are available only from MAPI, the translation and linguistic service in Lyon, France. These translations may not be distributed by anyone else.
>
> For regulatory reasons and to ensure consistency across all languages, MAPI is the only authorized translation and linguistic validation service for all my scales and structured interviews in the non-English language versions.

27.    Sheehan has steadfastly refused to provide Nview with meaningful copies of the copyrights that he has licensed to Nview, as well as updated versions of the Sheehan Technology despite the license and instructions of Nview under the Consulting Agreement. Sheehan has provided .pdf copies instead of Word copies while he provided Word copies to MAPI and possibly others.

14010693_5

28.     Nview customer Bracket nka Signant informed Dr. Young of Nview that it received several template documents from Sheehan that it was working on. The explained reason is that Sheehan said that they must get paper from him and that they must use MAPI.  These are both false representations as there is no license obligation that a client "must" get paper from Sheehan.  Also, Sheehan has no right to dictate where Nview customers get translations.

29.     Nview partner RWS, which provides translations, also received a false demand from Sheehan. Specifically, RWS reported:

> **From:**
> **Subject: RE: SDSc | PPD401069Q CRM:04731040**
> **Date:** February 5, 2021 at 11:51:10 AM MST
> **To:** Tom Young <tyoung@nview.com>
>
> Hi Tom,
>
> *******************
>
> I understand I need to have a license agreement with Nview and Sheehan that will include the English SDS, and a license agreement with Mapi to license the SDS translations.
>
> Please let me know if you have any questions or need any additional information.
>
> Best regards,

30.      Nview was informed that the above false directive came from Sheehan.  It is false that RWS needs a license with Sheehan, and it is false that RWS needs a license with MAPI.  RWS is a vendor with its own translation service, and in fact already has translations.  RWS is an Nview vendor, has its own platform, and is being falsely told by Sheehan, with no legal right whatsoever, that RWS cannot even translate its own materials.  RWS is being forced into using MAPI for a charge when they can do it themselves.  The net is that Sheehan is benefitting financially from MAPI at the expense of his exclusive licensee. Sheehan is forcing a competitor to use another competitor.

14010693_5

31.     Despite numerous attempts to contact Sheehan to resolve customer and vendor issues, Sheehan has remained silent after misinforming such Nview customers and vendors.

<u>Paper Rights</u>

32.     The License Agreement provides that Sheehan retained "the right to continue to use and bill for the use of the Sheehan Technology *in paper format* for all of his structured diagnostic interviews and rating scales." (License Agreement at Section 2.1.3.) (emphasis added).

33.     Sheehan's right to use and bill for the use of this technology *in paper format* is not an exclusion from the license, and is not an exclusive right to Sheehan. Nview also has this right under the plain language of the License Agreement, providing a license to Nview of the technology in *any format*.

34.     Sheehan's right to "use and bill for" is not an exclusion to Nview's license, and it is not an exclusive right to Sheehan. It simply means that notwithstanding the license of all Sheehan Technology for use in "any format" – which was restated in the Amendment – Sheehan himself can use and bill for paper.  This is a restrictive right, there is no right to Sheehan to sublicense, nor the right for Sheehan to authorize others to sublicense. Nor is this a right to dictate what Nview may do with paper.

35.     Furthermore, Sheehan did not retain any rights to use or bill for the use of Sheehan Technology in .pdf form. Indeed, a term sheet between the parties initially reserved the right to paper and .pdf to Sheehan, but ".pdf" was dropped from the final License Agreement.  This not only implies an intent to remove .pdf from Sheehan's rights, it was an express intent.

36.     In violation of the License Agreement, Sheehan is using and billing for the Sheehan Technology in .pdf form, including through his HARM Research Institute website https://harmresearch.org/index.php/shop/.

<u>Translations</u>

37.     Nview has sold its digital versions of MINI and other Sheehan Technology, to customers in countries with numerous national languages.

38.     Therefore, Nview and some of Nview's customers employ translators to utilize and, where appropriate, seek regulatory approval for Nview's products.

39.     As alleged above, Sheehan has contracted with one particular translation company, MAPI, such that when it translates MINI and other Sheehan Technology, MAPI pays Sheehan.

40.     MAPI charges customers a "pass-thru" fee for translation of Sheehan Technology, which it then pays to Sheehan.

41.     Sheehan has contacted other translation companies used by Nview and its customers, and instructed them they have no authority to translate the Sheehan Technology.

42.     Sheehan has no right or authority to issue such an instruction.

43.     As alleged above, Sheehan has told certain of Nview's customers that translations of all of the Sheehan Technology are available only from MAPI, and that translations may not be distributed by anyone else.

44.     Sheehan has no right or authority to make such false statements.

<u>Consulting Agreement</u>

45.     Nview and Sheehan are also parties to a Consulting Agreement dated June 24, 2019 (the "Consulting Agreement"), a true and accurate copy of which is attached hereto as Exhibit C and is incorporated herein by reference.

46.     The purpose of the Consulting Agreement is for Sheehan to support Nview and keep the Sheehan Technology up to date. This is quite opposite of positions taken by Sheehan that

Nview must consult with him; rather, the Consulting Agreement provides that Sheehan is to provide services as requested by Nview.

47.     The Consulting Agreement provides that Sheehan "will not accept work, enter into a contract or accept an obligation inconsistent or incompatible with [Sheehan's] obligations, or the scope of services to be rendered for [Nview]." (Consulting Agreement at Section 9).

48.     The Consulting Agreement also provided that Sheenah agreed to be Nview's Chief Scientific Officer.

49.     Pursuant to the terms of the Consulting Agreement, Sheehan is "not authorized to make any representation . . . on behalf of [Nview] unless specifically requested or authorized in writing to do so by [Nview]." (Consulting Agreement at Section 3).

50.     Pursuant to the terms of the Consulting Agreement, Sheehan is to "promptly disclose and describe to [Nview] all Company Innovations." (Consulting Agreement at Section 4.2).

51.     In violation of the Consulting Agreement, Sheehan has improperly refused to provide Nview with updated versions of the Sheehan Technology.

52.     In violation of the Consulting Agreement, Sheehan has improperly refused to provide Nview with versions of the Sheehan Technology in Word format.

53.     In violation of the Consulting Agreement, Sheehan has competed with Nview, including directing Nview customers, vendors, and prospective customers to his paper versions and to MAPI.

<u>Sheehan's Threatening Notice of Default</u>

54.     In an attempt to avoid the issues raised in this Complaint, on February 8, 2021, Sheehan served a "Notice of Default" of the License Agreement.

55.     The Notice of Default alleged that "Dr. Sheehan notifies Nview that it is in default of its express and implied obligations to consult with him."

56.     The Notice of Default did not cite any provision of the License Agreement allegedly defaulted by Nview. Indeed, there is no obligation in the License Agreement, express or implies, that Nview must consult with Dr. Sheehan.

57.     The Notice of Default requested a cure within 30 days, but still did not cite what provision of the License Agreement needed to be cured and how.

58.     Ironically, even if there was an obligation to consult with Sheehan, which there is not, Nview did attempt on numerous occasions to reach Sheehan, and he did not respond.

59.     Instead, Section 11.9 of the License Agreement provides that Sheehan has no right to speak for Nview, and the Consulting Agreement provides that Sheehan is to perform projects assigned to him.

60.     The Notice of Default also threatened Nview that its claims could be construed as retaliation despite the fact that Nview raised its allegation before Sheehan raised any counter-issue.

61.     The Notice of Default implied regulatory and white-collar criminal sanctions for unknown advice regarding billing practices.

62.     Setting aside that the allegations in the Notice of Default are false and in bad faith, the threat was clear – Nview would face retaliation and claims of unlawful conduct if it did not back-off of the truthful claims raised herein. Sheehan's tactic is itself improper – threatening baseless regulatory and white-criminal action in an attempt to prevent Nview from raising its legitimate contractual and intellectual property issues.

63.     The Notice of Default also serves as evidence that Sheehan's tactics are to re-trade the deal he made in exclusively licensing his technology to Nview.

14010693_5

64.     All conditions precedent to this lawsuit have been performed, waived or excused.

### Count I – Breach of Contract (License Agreement and Amendment)

65.     Nview incorporates and re-alleges paragraphs 1 – 64 as if set forth fully herein.

66.     In exchange for good and valuable consideration, Sheehan licensed the Sheehan Technology to Nview pursuant to the terms of the License Agreement and Amendment.

67.     Sheehan breached the License Agreement and Amendment by making false and misleading statements to certain of Nview's customers and/or potential customers.

68.     Such statements interfered with and prevented delivery of the Sheehan Technology licensed by Sheehan to Nview. In essence, Sheehan contracted to deliver consideration in the form of intellectual property, and then interfered with the license of such intellectual property.

69.     Sheehan has also breached the License Agreement and Amendment by contacting translation companies used by Nview and its customers, and instructing them they have no authority to translate the Sheehan Technology, when in fact Sheehan has no right to do so under the License Agreement and Amendment.

70.     Nview has been harmed by these statements, including by the damage done to its relationship with its customers and potential customers, and the damage done to its working relationship with translation companies.

71.     Sheehan also breached the License Agreement and Amendment by using and billing for the Sheehan Technology in .pdf form, including through his HARM Research Institute website https://harmresearch.org/index.php/shop/.

72.     Sheehan also breached the License Agreement and Amendment by refusing to respond to requests to clarify and correct for customers and vendors Nview's licensed rights.

73.     Nview has been harmed by this breach, including by sales lost by Nview that have gone instead to Sheehan.

74.     Such harm includes irreparable harm for which damages are insufficient to compensate Nview.

75.     Sheehan also breached the License Agreement and Amendment by making representations on behalf of Nview and with respect to the Sheehan Technology, electronic versions of same licensed by Nview, and translations of same.

76.     Nview has been harmed by this breach, including irreparable harm to its relationship with its customers and potential customers.

**Count II – Breach of Contract (Consulting Agreement)**

77.     Nview incorporates and re-alleges paragraphs 1 – 64 as if set forth fully herein.

78.     In exchange for good and valuable consideration, Sheehan agreed to serve as a consultant and Chief Scientific Officer for Nview pursuant to the terms of the Consulting Agreement.

79.     Sheehan breached the Consulting Agreement by:

a.  making representations on behalf of Nview with respect to the Sheehan Technology, electronic versions of same licensed by Nview, and translations of same;

b.  improperly refusing to provide Nview with updated versions of the Sheehan Technology;

c.  improperly refusing to provide Nview with versions of the Sheehan Technology in Word format;

14

d.   attempting to solicit Nview's customers or potential customers to purchase paper copies of the Sheehan Technology from Sheehan, as said conduct is inconsistent and incompatible with Sheehan's obligations under the Consulting Agreement; and

e.   remaining silent when Nview attempted to reach Sheehan to address customer and vendor issues.

80.   Nview has been harmed by these breaches, including by the business inefficiencies caused by Sheehan's breaches, and to the extent that Nview has paid Sheehan pursuant to the Consulting Agreement for consulting services that Sheehan has failed to provide.

81.   Such harm also includes irreparable harm for which damages are insufficient due to damage to Nview's customer and vendor relationships.

## Count III – Breach of Implied Covenant of Good Faith

82.   Nview incorporates and re-alleges paragraphs 1 – 64 as if fully set forth fully herein.

83.   Implied within the scope of the License Agreement by Sheehan to Nview, and in the Consulting Agreement, is that Sheehan will not interfere and will not compete against such exclusive license and his consulting obligations to Nview.

84.   Such implication includes that Sheehan will not discourage customers and prospective customers from licensing and/or using Nview products based on Sheehan Technology licensed to Nview.

85.   Such implication includes that Sheehan will not use his copyright ownership and right to use and bill for paper to redirect Nview customers and prospective customers to his paper.

86.   Such implication includes that Sheehan will not falsely inform customers, translation companies, and MAPI that MAPI is the only authorized translation company for

Sheehan Technology, including paper, so as to financially benefit Sheehan at the expense of Nview and its customers and vendors.

87.     Nview has been damaged by Sheehan's conduct in violation of the implied covenant of good faith, including irreparable harm for which damages are insufficient to compensate Nview.

### Count IV – Defamation

88.     Nview incorporates and re-alleges paragraphs 1 – 64 as if fully set forth fully herein.

89.     Sheehan verbally broadcast false statements about Nview to certain of Nview's customers and/or potential customers, including statements alleged in paragraph 19 – 29.

90.     In making these statements Sheehan acted negligently or with actual malice.

91.     These statements called into question Nview's fitness to conduct business, resulting in defamation per se.

92.     These false statements caused material and reputational harm to Nview, including by the damage done to its relationship with its customers and potential customers, and the damage done to its working relationship with translation companies.

### Count V – Tortious Interference with Contract

93.     Nview incorporates and re-alleges paragraphs 1 – 64 as if set forth fully herein.

94.     Sheehan's actions in competition with Nview are not in the role as a party to any relationship with Nview, but are instead in the role of the limited retained right to use and bill for paper. Sheehan's conduct, as identified above, amounted to tortious interference with prospective economic advantage. In other words, when it comes to Sheehan's interference, he is acting as a third party to the relationship between Nview and its customer prospective customers, and vendors.

95.     Nview has contractual relationships with its customers, including those alleged herein.

96.     Sheehan intentionally interfered with such relationships, including informing Nview customers that there is no Nview digital version of the Sheehan Technology, that he has not approved digital versions by Nview (implying a right to approve he does not have), by instructing customers and vendors that MAPI is the only authorized translation company, and by redirecting such parties to paper versions of the Sheehan Technology from Sheehan.

97.     Sheehan's actions interfered with Nview's contractual relationships.

98.     Nview suffered damages as a result of Sheehan's tortious interference, including the damage done to its relationship with its customers and potential customers, and the damage done to its working relationship with translation companies.

**Count VI – Tortious Interference with Prospective Economic Advantage**

99.     Nview incorporates and re-alleges paragraphs 1 – 64 as if set forth fully herein.

100.    Sheehan's actions in competition with Nview are not in the role as a party to any relationship with Nview, but are instead in the role of the limited retained right to use and bill for paper. Sheehan's conduct, as identified above, amounted to tortious interference with prospective economic advantage. In other words, when it comes to Sheehan's interference, he is acting as a third party to the relationship between Nview and its customer prospective customers, and vendors.

101.    Nview had a reasonable probability of a business opportunity with its prospective customers.

102.    Sheehan intentionally interfered with those opportunities, including informing prospective customers that there is no Nview digital version of the Sheehan Technology, that he has not approved digital versions by Nview (implying a right to approve he does not have), by

instructing customers and vendors that MAPI is the only authorized translation company, and by redirecting such parties to paper versions of the Sheehan Technology from Sheehan.

103.    Sheehan's actions were the proximate cause of Nview's failure to secure customer relationships.

104.    Nview suffered damages as a result of Sheehan's tortious interference, including the damage done to its relationship with its customers and potential customers, and the damage done to its working relationship with translation companies.

<u>**Count VII – Deceptive and Unfair Trade Practices (Delaware)**</u>

105.    Nview incorporates and re-alleges paragraphs 1 – 64 as if set forth fully herein.

106.    Sheehan has engaged in deceptive and unfair trade practices in violation of 6 Del. C. § 2532:

  a.  Directly competing with and improperly soliciting Nview's customers to his paper despite his acting as a consultant for Nview and his licensing the Sheehan Technology to Nview including paper versions of the Sheehan Technology to Nview's customers and potential customers, giving the false impression he has the right;

  b.  Interfering with Nview's reasonable probability of a business opportunity with prospective customers by his false or implicitly misleading representations regarding Nview product as alleged herein; and

  c.  Making false state statements to the following effect:

    i.  that Sheehan has not approved electronic versions of the Sheehan Technology, including the one distributed by Nview;

18

    ii.   that the digital versions of the Sheehan Technology are invalid and that customers should use paper versions from Sheehan instead;

    iii.   that digital versions of the Sheehan Technology are not available; and

    iv.   that translations of all the Sheehan Technology are available only from MAPI, and that translations may not be distributed by anyone else.

### Count VIII – Deceptive and Unfair Trade Practices (Florida)

107.    Nview incorporates and re-alleges paragraphs 1 – 64 as if set forth fully herein.

108.    Sheehan has engaged in deceptive and unfair trade practices in violation of Fla. Stat. § 501.201 *et seq.*:

    a.   Directly competing with and improperly soliciting Nview's customers to his paper despite his acting as a consultant for Nview and his licensing the Sheehan Technology to Nview including paper versions of the Sheehan Technology to Nview's customers and potential customers;

    b.   Interfering with Nview's reasonable probability of a business opportunity with prospective customers by his false or implicitly misleading representations regarding Nview product as alleged herein; and

    c.   Making false state statements to the following effect:

        i.   that Sheehan has not approved electronic versions of the Sheehan Technology, including the one distributed by Nview, giving the false impression he has the right;

        ii.   that the digital versions of the Sheehan Technology are invalid and that customers should use paper versions from Sheehan instead;

        iii.   that digital versions of the Sheehan Technology are not available; and

iv. that translations of all the Sheehan Technology are available only from MAPI, and that translations may not be distributed by anyone else.

### Count IX –Unfair Competition

109. Nview incorporates and re-alleges paragraphs 1 – 64 as if set forth fully herein.

110. Sheehan has engaged unfair methods of competition, including making false statements to redirect Nview customers and prospective customers to his licensing of paper and to his chosen translation company at the expense of Nview. This includes:

a. Directly competing with and improperly soliciting Nview's customers to his paper despite his acting as a consultant for Nview and his licensing the Sheehan Technology to Nview including paper versions of the Sheehan Technology to Nview's customers and potential customers;

b. Interfering with Nview's reasonable probability of a business opportunity with prospective customers by his false or implicitly misleading representations regarding Nview product as alleged herein; and

c. Making false state statements to the following effect:

i. that Sheehan has not approved electronic versions of the Sheehan Technology, including the one distributed by Nview, giving the false impression he has the right;

ii. that the digital versions of the Sheehan Technology are invalid and that customers should use paper versions from Sheehan instead;

iii. that digital versions of the Sheehan Technology are not available; and

14010693_5

iv.    that translations of all the Sheehan Technology are available only from MAPI, and that translations may not be distributed by anyone else.

111.    Sheehan's actions were the proximate cause of Nview's damages, including the damage done to its relationship with its customers and potential customers, and the damage done to its working relationship with translation companies. Such harm includes irreparable harm for which damages are insufficient to compensate Nview for damages customer and vendor relationships.

<u>**Count X – Injunctive Relief**</u>

112.    Nview incorporates and re-alleges paragraphs 1- 64 as if set forth fully herein.

113.    Sheehan's false and misleading statements to Nview's customers, potential customers, business partners, and vendors is of a recurring nature and is continuing to cause irreparable injury to Nview. Unless enjoined by the Court, Sheehan will continue these acts and cause Nview further immediate and irreparable damage.

114.    Unless prohibited by the Court, Sheehan's false and misleading statements are likely to cause injury to Nview's goodwill and reputation in the industry for which Nview has no adequate remedy at law.

115.    As a result of Sheehan's false statements, Nview has suffered and continues to suffer and incur irreparable injury and loss of reputation, and damage to its relationship with its customers and potential customers, and damage to its working relationship with translation companies.

<u>**Count XI – Declaratory Relief (Exclusive License, Paper Versions)**</u>

116.    Nview incorporates and re-alleges paragraphs 1 – 64 as if set forth fully herein.

14010693_5

117.    Nview seeks declaratory relief pursuant to 28 U.S.C. §2201.

118.    Sheehan has asserted that he retained an exclusive right to paper and .pdf.

119.    Nview asserts that pursuant to the License Agreement, it received a license to the Sheehan Technology without exception, including the right to deliver the Sheehan Technology in "any format."

120.    Nview asserts that Sheehan limited retained right does not include .pdf.

121.    Nview asserts that Sheehan's limited right to paper includes only his personal right to "use and bill for" paper, and that this does not include the right to authorize sublicense paper or any format of the Sheehan Technology.

122.    Nview thus believes that Sheehan has no right to use the paper format of the Sheehan Technology to directly compete with and solicit customers or potential customers from Nview.

123.    Nview thus seeks a declaration that it has licensed the right to paper, that Sheehan has no rights to license .pdf, and that Sheehan has no rights to dictate Nview's use, distribution, and other licensed rights to the Sheehan Technology.

## Count XII – Declaratory Relief (Notice of Default)

124.    Nview incorporates and re-alleges paragraphs 1 – 64 as if set forth fully herein.

125.    Nview seeks declaratory relief pursuant to 28 U.S.C. § 2201.

126.    Sheehan has issued a Notice of Default, based on Nview's alleged failure to consult with him.

127.    In such Notice of Default, Sheehan has cited no express or implied obligation of Nview to consult with Nview.

14010693_5

128.     Nview asserts that there is no Default. Indeed, there is no express or implied obligation of Nview to consult with Dr. Sheehan; rather the reverse is true, and Sheehan has refused to respond to inquiries regarding his interference with Nview customer and vendor relationships.

129.     Nview thus seeks a declaration that there is no default of the License Agreement by Nview.

130.     Nview also seeks a declaration that the Notice of Default was issued in bad faith, based on a false threat of regulatory and white-collar criminal conduct in an effort to prevent Nview from raising its legitimate claims herein.

### **Prayer for Relief**

WHEREFORE, Nview requests the following relief:

a.   Preliminarily and permanently enjoin and restrain Sheehan from making false statements to the effect that:

   i.   Sheehan has not approved electronic versions of the Sheehan Technology, including the one distributed by Nview, without also disclosing that it is not his authority to approve Nview products based on Sheehan Technology he licensed to Nview;

   ii.   the digital versions of the Sheehan Technology are invalid and that customers should use paper versions from Sheehan instead;

   iii.   digital versions of the Sheehan Technology are not available;

   iv.   translations of the Sheehan Technology are available only from MAPI; and

   v.   translations may not be distributed by companies other than MAPI.

b.   Declaratory relief to the effect that:

       i.   Sheehan does not have an exclusive license to the paper format of the Sheehan Technology, and in fact, Nview also has a right to use the paper format of the Sheehan Technology;

      ii.   Sheehan has no rights to the .pdf format of the Sheehan Technology, and in fact, Nview has exclusive rights to the .pdf format of the Sheehan Technology; and

     iii.   Sheehan has no rights to use the paper format of the Sheehan Technology to directly compete with and/or solicit customers or potential customers from Nview; and

     iv.   The Notice of Default is invalid.

c.   Judgment against Sheehan for Nview's breach of contract claims and an award of monetary damages in an amount to be proven at trial.

d.   Nview's attorneys' fees and costs as permitted by Section 11.7 of the License Agreement, Section 11.5 of the Consulting Agreement, the Florida Deceptive and Unfair Trade Practices Act §501.2105, and the Delaware Deceptive and Unfair Trade Practices Act § 2533.

e.   Award Nview such other and further relief as the Court may deem just and proper.

Respectfully submitted this 18th day of February, 2021.

14010693_5

Respectfully submitted,
**MORRIS, MANNING & MARTIN, LLP**

*/s/ Lawrence H. Kunin*
Lawrence H. Kunin
Florida Bar Number 50210
Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
404-233-7000 (telephone)
404-365-9532 (facsimile)
lkunin@mmmlaw.com

*Attorneys for Nview Health, Inc.*

14010693_5

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NVIEW HEALTH, INC.,                    )
                                       )
      Plaintiff,                        )
                                       )
v.                                     )    Case No.: _____
                                       )
DAVID SHEEHAN, M.D.                    )
                                       )
      Defendant.                        )


## **VERIFICATION**

I declare under penalty of perjury that the foregoing paragraphs 1, 7 – 63 are true and correct.

Executed on February 18 , 2021.

Name: _____
                               Jim Szyperski

14010693_4