UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NVIEW HEALTH, INC.,

    Plaintiff,

v.                                        Case No.: 8:21-cv-385-VMC-TGW

DAVID V. SHEEHAN,

    Defendant.
_____/

## ORDER

This matter comes before the Court pursuant to Defendant David Sheehan's Motion to Dismiss (Doc. # 22), filed on March 31, 2021. Plaintiff Nview Health, Inc. responded on April 30, 2021. (Doc. # 29). Dr. Sheehan replied on May 12, 2021. (Doc. # 34). For the reasons that follow, the Motion is denied.

**I.  Background**

According to the complaint, Nview is a Delaware corporation that is "in the business of providing healthcare professionals, educators, and researchers with software solutions that assist them in more accurately and efficiently identifying, diagnosing, and monitoring individuals seeking behavioral health assistance." (Doc. # 1 at ¶ 7). Dr. Sheehan is a medical doctor based in Florida who "developed or co-developed and holds certain copyrights to certain technology

consisting of healthcare assessment and monitoring tools," which include "profiling scales, interviews and trackers that are used to help determine and monitor a patient's mental health." (Id. at ¶ 8).

On February 15, 2016, Dr. Sheehan and Nview entered into a License Agreement (Doc. # 1-1) that licensed these diagnostic tools ("the Sheehan Technology") to Nview, granting Nview "a worldwide, transferable, exclusive license, with the right to sublicense in multiple tiers, to develop, make, have made, use, sell, offer to sell, import, reproduce, distribute, modify, display and otherwise commercialize products utilizing the Sheehan Technology in the Field." (Doc. # 1 at ¶¶ 8-10). The License Agreement covered the "Mini International Neuropsychiatric Interview" (MINI) as well as the "Sheehan Disability Scale" (SDS). (Id.).

Pursuant to the License Agreement, "Field" refers to "behavioral healthcare and healthcare technology specifically in any format. This includes all commercial and research applications for these technologies." (Id.). Among other provisions, the License Agreement also contained the following term:

> [Dr. Sheehan] agrees that [he] will have no right
> or authority at any time to make any representation
> or commitment on behalf of Nview, or to make any

representations or warranties, guarantees or commitments with respect to the technology, except as expressly authorized by Nview in writing.

(Doc. # 1-1 at 9).

Under the License Agreement, Dr. Sheehan "retain[ed] the right to continue to use and bill for the use of the Sheehan Technology in paper format for all of his structured diagnostic interviews and rating scales." (Doc. # 1 at ¶ 10).

Dr. Sheehan and Nview amended the License Agreement on April 3, 2019, (Doc. # 1-2), clarifying that the license was "perpetual," and that "Field" meant "all fields of use, in any format, including behavioral healthcare, healthcare technology and commercial research application." (Doc. # 1 at ¶ 12).

Nview and Dr. Sheehan are also parties to a Consulting Agreement dated June 24, 2019. (Doc. # 1-3). "The purpose of the Consulting Agreement is for [Dr.] Sheehan to support Nview and keep the Sheehan Technology up to date." (Doc. # 1 at ¶ 46). In relevant part, the Consulting Agreement provides that Dr. Sheehan "will not accept work, enter into a contract, or accept an obligation inconsistent or incompatible with [his] obligations, or the scope of services to be rendered for [Nview]" (Id. at ¶ 47), and that [Dr. Sheehan] is not authorized to make any representation, contract or commitment

3

on behalf of [Nview] unless specifically requested or authorized in writing to do so by [Nview]." (Doc. # 1-3 at 2).

"Pursuant to the license granted to Nview in the License Agreement, Nview developed digital versions and applications of MINI and certain other of Sheehan's scales and diagnostic interviews." (Doc. # 1 at ¶ 18). Nview sold these digital versions to customers around the globe, many of whom spoke languages other than English. (Id. ¶ 37). "Therefore, Nview and some of Nview's customers employ translators to utilize and, where appropriate, seek regulatory approval for Nview's products." (Id. at ¶ 39).

According to Nview, since entering the License Agreement and Consulting Agreement, Dr. Sheehan has "made numerous false and misleading statements to certain of Nview's customers and/or potential customers," including:

1. "that [Dr.] Sheehan has not approved electronic versions of the Sheehan Technology, including those distributed by Nview";
2. "that the digital versions of the Sheehan Technology are invalid and that customers should use paper versions from [Dr.] Sheehan instead"; and

3. "that digital versions of the Sheehan Technology
   are not available."

(Id. at ¶¶ 20-26).

Dr. Sheehan has also allegedly "contacted translation companies used by Nview and its customers . . . and instructed them that they have no authority to translate the Sheehan Technology," and that customers must instead use the specific translation service "MAPI." (Id. at ¶ 23). Nview maintains that these "false and misleading" statements have "confus[ed] customers and prospective customers," and due to that confusion Nview has lost sales "that have gone instead to [Dr.] Sheehan." (Id. at ¶¶ 20, 73).

On February 8, 2021, Dr. Sheehan served a notice of default of the License Agreement on Nview, notifying Nview that "it is in default of its express and implied obligations to consult with him." (Id. at ¶¶ 54-55; Doc. # 22-1).

In response, Nview initiated the instant action on February 18, 2021, alleging breach of the License Agreement and Amendment (Count I), breach of the Consulting Agreement (Count II), breach of the implied covenant of good faith (Count III), defamation (Count IV), tortious interference with contract (Count V), tortious interference with prospective economic advantage (Count VI), deceptive and

unfair trade practices (Counts VII and VIII), and unfair competition (Count IX). (Doc. # 1 at 13-21). Nview also requests injunctive relief, asking the Court to prohibit Dr. Sheehan from making "false and misleading statements to Nview's customers, potential customers, business partners, and vendors" (Count X). (Id. at 21). Finally, Nview requests declaratory relief that Nview has "received a license to the Sheehan Technology without exception" (Count XI) and that "there is no default of the License Agreement by Nview" (Count XII). (Id. at 21-23).

Dr. Sheehan now moves to dismiss the complaint for failure to state a claim. (Doc. # 22). Nview has responded (Doc. # 29), Dr. Sheehan has replied (Doc. # 34), and the Motion is ripe for review.

## II. **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

III. **Analysis**

In his Motion, Dr. Sheehan does not address each claim for relief separately. Instead, he makes two overarching arguments in favor of dismissal of the complaint in its entirety: that Nview's "factual allegations are either directly refuted by the parties' relationship-forming documents or lack sufficient detail to support a plausible claim for relief." (Doc. # 22 at 26). Dr. Sheehan also briefly challenges both declaratory judgment counts as insufficient under the Declaratory Judgment Act. (Id. at 24-26). The Court

disagrees and finds that dismissal is inappropriate on any of these grounds.

1.  **Sufficient Detail to State a Claim**

The Court begins with the second argument, that the complaint lacks the level of factual detail needed to support a plausible claim for relief. Dr. Sheehan argues that the complaint as a whole fails to satisfy Rule 8's pleading standard because all twelve counts "depend on a handful of alleged statements Dr. Sheehan made to third parties, which the Complaint selectively presents and lifts out of context." (Doc. # 22 at 5-7).

Dr. Sheehan is correct that the complaint's claims all hinge on a series of alleged interactions between Dr. Sheehan and Nview's customers and potential customers. However, the Court finds that Nview alleges these interactions in sufficient detail to put Dr. Sheehan on notice of the conduct of which he is accused.

The complaint describes at least three interactions between Dr. Sheehan and Nview customers in adequate detail. First, Nview claims that

> [Dr.] Sheehan spoke with Tanya Ryder from the Department of Child and Adolescent Psychiatry, Division of Mental Health and Addiction, Vestfold Hospital Trust, Norway, and told her that he has

not approved electronic versions of the MINI,
including the one distributed by Nview.

(Doc. # 1 at ¶ 21). Second, according to the complaint,

> Dr. Sarah Melancon reported to Nview that she contacted [Dr.] Sheehan to see if the MINI screen could be administered online, and that he said that a digital version is not available.

(Id. at ¶ 22). Third, Nview accuses Dr. Sheehan of making the following statements to MedAvante, one of Nview's clients:

> All translations of MINI 6 and MINI 7.0.2 and its variants (like MINI Kid) and all my scales, like the SDS or the S-STS (beyond the English language versions) are available only from MAPI, the translation and linguistic service in Lyon, France. These translations may not be distributed by anyone else.
>
> For regulatory reasons and to ensure consistency across all languages, MAPI is the only authorized translation and linguistic validation service for all my scales and structured interviews in the non-English language versions.

(Id. at ¶ 26).

"Generally, notice pleading is all that is required for a valid complaint." Thomas v. Murphy Oil Corp., No. 1:18-CV-3142-TWT, 2018 WL 10510817, at *1 (N.D. Ga. Sept. 17, 2018) (citing Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985)). And under notice pleading, the plaintiff need only give the defendant fair notice of its claim and the grounds upon which it rests. Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

Here, the complaint — which lists Dr. Sheehan as the speaker, three specific customers and potential customers as the listeners, and the precise substance of each alleged conversation — passes that threshold. In context, the allegations are sufficient to put Dr. Sheehan on notice of "the basic facts and the crux of [Nview's] grievances." Holtzman v. B/E Aerospace, Inc., No. 07-80551-CIV, 2008 WL 214715, at *3 (S.D. Fla. Jan. 24, 2008) (denying a motion to dismiss and finding the factual allegations of a complaint sufficient under Rule 8(a) and Twombly where the plaintiff "alleged that [the defendant] made multiple false statements about [the plaintiff] (e.g., regarding his resignation, his handling of assignments, and his competence), that [the defendant] made these statements to various individuals and corporate officers . . ., and that [the plaintiff] suffered damages as a result").

True, the complaint could have benefitted from more detail, such as the dates of the alleged statements. Nonetheless, the Court is satisfied that Counts I through XII meet the liberal pleading requirements of Rule 8(a) and Twombly. When all factual allegations are taken as true and construed in the light most favorable to Nview, the complaint plausibly alleges several false and misleading statements.

10

These statements are described in enough detail to put Dr. Sheehan on notice of the claims against him and respond in good faith, therefore they form an adequate factual basis for each cause of action. See, e.g., Eye Centers of Fla., P.A. v. Landmark Am. Ins. Co., No. 2:18-cv-547-SPC-CM, 2018 WL 4492241, at *2 (M.D. Fla. Sept. 19, 2018) (finding a complaint to provide a "plausible basis for relief" where the plaintiff alleged "the existence of a contract for insurance coverage between the parties, performance or waiver of all conditions precedent to recovery, breach of Landmark in refusing to pay benefits owed under the policy, and damages"); Holtzman, 2008 WL 214715, at *3 (finding dismissal unwarranted and that the plaintiff alleged sufficient facts to state a cause of action for defamation).

Indeed, considering the context of the claims, "there is a practical limit to how much more detail [Nview] can plead at this stage. All that [it] can plead is the overall context of the alleged . . . statements. What more detail [it] can add is unclear given that [it] was not physically present when and where the [Dr. Sheehan] spoke to [Nview's customers and potential customers about the technology]." Solis v. Okeechobee Shooting Sports, LLC, No. 19-14440-CIV, 2020 WL 3089094, at *4 (S.D. Fla. Mar. 26, 2020) (declining to dismiss

11

a defamation claim where the plaintiff alleged that the defendant, her former employer, "was telling all of [its] customers that [she] stole money," and named "four former and current employees who she believes heard the owner telling customers that she 'was fired for stealing'"), report and recommendation adopted, No. 2:19-CV-14440, 2020 WL 3089091 (S.D. Fla. Apr. 20, 2020).

The interactions in the complaint are sufficient for the Court to draw the reasonable inference that Dr. Sheehan is liable for the alleged misconduct, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and that there is a "reasonable expectation that discovery will reveal evidence" that supports Nview's claims. Twombly, 550 U.S. at 556. The Court therefore finds that dismissal on this basis is unwarranted.

**2.  Relationship-Forming Documents**

As for the first argument, both parties spend a significant portion of their pleadings debating whether various "relationship-forming" documents should be reviewed at the pleading stage, and whether these documents defeat Nview's claims. (Doc. # 22 at 8-12; Doc. # 29 at 4-10). These documents include the unanimous consent of Nview's Board of Directors (Doc. # 22-2), the Nview Bylaws (Doc. # 22-3), and

12

two term sheets between Dr. Sheehan and Nview from 2016 (Doc. ## 22-4, 22-5).

Assuming, without deciding, that these documents are central to Nview's claims — and can therefore be reviewed without converting the Motion into a motion for summary judgment — the Court agrees with Nview that the documents do not defeat Nview's claims at this stage of the proceedings. (Doc. # 29 at 6-8).

The thrust of Nview's complaint, and the basis of all twelve counts, is that Dr. Sheehan made several false and/or misleading representations about Nview and the licensed Sheehan Technology, without the proper authorization from Nview, in violation of Section 11.9 of the License Agreement (Doc. # 1-1 at 9) and Section 3 of the Consulting Agreement (Doc. # 1-3 at 2). (Doc. # 1 at ¶¶ 19, 49, 67, 79, 86, 89, 96, 102, 106, 108, 110, 113, 118-122, 128-130).

In response, Dr. Sheehan maintains that the terms of the various relationship-forming documents authorized his actions and statements. Therefore, according to him, his alleged conversations did not exceed the scope of his authority or violate any agreement with Nview. (Doc. # 22 at 12).

Such an argument is fact-specific and better suited for summary judgment. At the motion to dismiss stage, the Court must take Nview's allegations as true. And the complaint alleges that Dr. Sheehan made various statements to Nview customers that ranged from misleading to categorically false. (Doc. # 1 at ¶¶ 19-29). Although the relationship-forming documents authorize Dr. Sheehan to engage in various activities, such as ensuring the accuracy of the technology or representing the scientific goals of Nview at scientific and medical meetings, the Court agrees with Nview that none of the relationship-forming documents cited by Dr. Sheehan empower him to make outright falsehoods to customers, or at the very least mislead them.

Therefore, even taking into consideration the relationship-forming documents, Nview has plausibly alleged claims for breach of contract, breach of the implied covenant of good faith and fair dealing, defamation, tortious interference with contract and with prospective economic advantage, deceptive and unfair trade practices, and unfair competition, based on the statements in the complaint. Dismissal is therefore inappropriate on this ground.

### 3. Declaratory Judgment Counts

Finally, the Motion contains two brief challenges to the requests for declaratory judgment in which Dr. Sheehan argues that Counts XI and XII fail to state a justiciable claim under the Declaratory Judgment Act. Regarding Count XI seeking a declaration that Nview has "received a license to the Sheehan Technology without exception" (Doc. # 1 at ¶ 119), Dr. Sheehan argues this count "lacks adequate detail about the existence of any genuine, immediate, or substantial controversy involving Nview's use of Dr. Sheehan's paper and PDF instruments." (Doc. # 22 at 24-26). And, according to Dr. Sheehan, Count XII — which requests declaratory judgment that "there is no default of the License Agreement by Nview," and that the "notice of Default was issued in bad faith" (Doc. # 1 at ¶¶ 128-130) — is "at best premature" and "at worst fundamentally misstated." (Doc. # 22 at 24-26).

As for Count XI, as stated previously, the Court agrees that the complaint could have benefited from more specifics. However, the allegations supporting this claim contain sufficient detail to state a controversy over the terms of the License Agreement and Consulting Agreement. Therefore, dismissal of Count XI, or Count XII for that matter, based on lack of factual detail is unwarranted.

As to Count XII, the Declaratory Judgment Act holds that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201. The Eleventh Circuit has noted that

> [t]he difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree . . . Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

GTE Directories Pub. Corp. v. Trimen Am., Inc., 67 F.3d 1563, 1567 (11th Cir. 1995) (internal citation omitted).

Dr. Sheehan's only argument regarding Count XII is that no such controversy exists because "Nview has not alleged any curative steps in response to the notice, nor has Nview alleged that Dr. Sheehan has issued a termination notice based on a material breach." (Doc. # 22 at 25-26). However, Nview does not request a declaration that **termination** was unwarranted. Rather, Count XII requests a declaration that there was no **default** of the license.

16

Dr. Sheehan concedes that he issued a default notice to Nview (indeed, he attaches it to his Motion) (Doc. # 22-1), therefore, there is a live controversy regarding whether Nview defaulted on its license, and whether the notice of default was issued in bad faith. Dismissal is thus unwarranted on this ground. See <u>Hibbett Sporting Goods, Inc. v. ML Georgetown Paris, LLC</u>, No. CV 5: 18-524-DCR, 2019 WL 475001, at *4 (E.D. Ky. Feb. 6, 2019) (holding that the Court "will not decline to exercise jurisdiction under the Declaratory Judgment Act where the plaintiff "[sought] a declaratory judgment that it is not in default under the Lease and that an event of default within the meaning of the Lease has not occurred"); <u>Medtronic, Inc. v. Am. Optical Corp.</u>, 327 F. Supp. 1327 (D. Minn. 1971) (declining to dismiss a declaratory judgment action and finding that a letter sent by patent licensor to licensee stating that licensee's model infringed patent and threatening suit against third party for manufacture of similar devices was sufficient to constitute "actual controversy" under the Declaratory Judgment Act). Dr. Sheehan offers no other argument in support of dismissal. Therefore, the Court agrees with Nview that it has met the basic pleading standard and adequately stated a claim for declaratory judgment regarding the notice of default issued

by Dr. Sheehan. The Court will not dismiss Count XII on this basis.

As for Dr. Sheehan's request that the Court exercise its discretion and decline jurisdiction over the declaratory judgment actions, Dr. Sheehan's cursory briefing on this matter has failed to persuade the Court that this is appropriate. The Court will not decline to exercise jurisdiction under the Declaratory Judgment Act for either count.

In sum, the Court finds it inappropriate to dismiss any count of the complaint based on the arguments set forth in the Motion.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant David Sheehan's Motion to Dismiss (Doc. # 22) is **DENIED.**

(2) Dr. Sheehan is directed to file his answer to the complaint by **July 12, 2021.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 29th day of June, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE